IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES B. BUCHANAN and | ) | NO. 2:05-0114 |
| KAREN D. BUCHANAN, Debtors | ) | JUDGE HAYNES |

## MEMORANDUM

Appellant, BankEast, formerly known as Citizens Bank of Gainesboro, filed this appeal (Docket Entry No. 1) from the Order of the Honorable Marian Harrison, Bankruptcy Judge in an adversary proceeding. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) and the Federal Rules of Bankruptcy Procedure 8001(a). In essence, Judge Harrison dismissed Appellant's motion to dismiss and found that the debtors, James B. Buchanan and Karen D. Buchanan, qualify as family farmers for their Chapter 12 proceeding, valued their property at $70,000, and approved the Debtors' Chapter 12 plan based upon that valuation.

The Appellant asserts the following issues in this appeal:

I. Whether the Bankruptcy Court erroneously held that the Debtors are "family farmers" with the requisite amount of regular annual income from "farming operations" as defined by the Bankruptcy Code, so as to qualify the Debtors for Chapter 12 protection.

II. Whether the Bankruptcy Court erred in granting the Debtors' Application to Employ an Appraiser to determine the value of the Debtors' "farm."

III. Whether the Bankruptcy Court erred in determining that the Debtors' farm which is encumbered by a deed of trust in favor of BankEast in the sum of $134,659.51, is

worth $70,000.00.

For the reasons stated below, the Court affirms the Bankruptcy Court's Order.

## A. Standard of Review

"When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as an appellate court, and applies the standard of review generally applied in the federal courts of appeals." In re Matter of Webb, 954 F.2d 1102, 1103-04 (5th Cir. 1992) (footnotes omitted). Thus, under 28 U.S.C. § 158(a), in reviewing a bankruptcy court's decision, a district court applies a clearly erroneous standard of review to findings of fact, and a de novo standard of review to conclusions of law. In re Baker & Getty Financial Services, Inc., 106 F.3d 1255, 1259 (6th Cir. 1997). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## B. REVIEW OF THE RECORD

The Debtors breed, board and sell walking horses on 3.8 acres of land in Putnam County, Tennessee. According to J.B. Buchanan, "I train horses . . . [and] boarding, primarily walking horses." Transcript, p. 6, lines 8-9. Eighty percent (80%) of Buchanan's workday involves training horses and Karen Buchanan spent 50% of her time on the debtors' operation. Eighty percent (80%) of the Debtors' gross income for the years immediately preceding the filing of the bankruptcy petition was from the "boarding/training" portion of their horse business.

Plaintiffs filed a petition for bankruptcy under Chapter 12 of the Bankrputcy Code. In section 18 of the statement of Financial Affairs filed with their Voluntary Petition, Debtors stated that business is "Buchanan Stables," and are engaged as "Horse Trainers." In section 14 of their

2

Statement of Financial Affairs, the Debtors asserted that they "board 22 horses that belong to various owners," and that the "number of horses varies from month to month." In addition, the Debtors "have four show saddles and various equipment that belongs to various horse owners." At the time of their filing, Debtors also owned 11 horses, including the breeding stallions and brood mares. Debtors also have a 50% interest in three brood mares, one of which is on their premises and the other two are with another breeder for breeding purposes.

The Debtors have a 150' x 40' barn with 26 stables and wash room, along with a 12' x 40' shed for storage. A grain bin is attached to the barn to store hay. Debtors also own a truck, a manure spreader, a horse cart, a horse trailer, and tack and supplies for maintaining the horses, although they do not own a tractor or a plow. Debtors have been in this of business since January, 1997.

At the time of the bankruptcy filing, Debtors had an outstanding loan from BankEast in the amount of $137,249.18 based upon their real property and mobile home. That loan was secured by a deed of trust held by BankEast. This loan was approved by BankEast's predecessor in 2002 based upon an appraisal of Herb Smith who valued the debtors' property in excess of $150,000. In the loan process, the bank described the Debtors' business as agricultural.

The Bankruptcy Judge found the Debtors business involves traditional farming risks, such as weather, supply and demand, health and upkeep of the animals, and the price of feed. The Bankruptcy Judge also found that the Debtors' business is regulated by the Department of Agriculture.

During the proceedings, the Bankruptcy Judge appointed Tim Richardson, a certified appraiser with twenty-one years of experience. BankEast objected to this order of appointment, citing its pending motion to dismiss.

3

Richardson physically inspected the debtor's property, including their double-wide mobile home and farm area, and researched sales of comparable properties which he actually visited. Richardson concluded that a limited market existed for the debtors' property, and opined the barn had limited value due to its specialized use. Richardson utilized primarily a market approach for comparable sales and found the value of the property to be $70,000.00. In Richardson's view, a cost approach appraisal lacked validity for this type of property. Richardson also did not utilize the income approach because he was not valuing the business and the property is not held as rental property to produce income.

In Richardson's view, the market approach is best given the difficulty in estimating replacement costs. (Transcript p. 31, lines 17-25). Richardson, however, did take into account the proposed disposition or use of the property. Richardson described the limited market for the property based upon its use as one or two scenarios:

> Someone who would be interested and give a significant amount of money for what they term "the horse barn" really not being interested in having the double-wide home.
>
> Conversely, somebody who would be interested in living in that house, or buying if for residential purposes would really probably not have a lot of utility, or give a lot of value for the barn being there simply for - it seems to be a specialized use.

(Transcript p. 26, lines 12-20).

The BankEast's appraiser, Herb Smith, conducted his appraisal in 2002 for the loan and before the Debtors added 15 stalls to their barn. Smith could not find comparable sales for the property and based his appraisal upon the comparable sale of a double-wide mobile home on one acre, and valued the barn at replacement cost. Smith gave an additional value by capitalizing the debtors' income. Another appraiser, whose valuation was conducted in 2000, was not a certified

4

appraiser.

The Bankruptcy Judge adopted Richardson's appraisal as most likely to reflect the actual value of the debtor's three plus acres, the house and the barn. The Bankruptcy Judge credited Richardson's testimony in light of the sale of this property for $40,000.00 without the barn and that a person in the market for a house farm would likely seek more than a small acreage as well as a larger, non-manufactured house. Accordingly, the Bankruptcy Judge found the $70,000.00 to be a reasonable value for the Debtors' operation and approved the Debtors' Chapter 12 plan.

## C. CONCLUSIONS OF LAW

As to the first issue on appeal, BankEast cited the debtors' filing of a Schedule C rather than a Schedule F that is the Schedule for a farming operation with their income tax returns as demonstrating that the debtors did not engage in farming. Yet, the bankruptcy courts have ruled that such a filing is not determinative of whether they are "farmers." In re: Bircher, 241 B.R. 11 (Bankr. S.D. Iowa 1999); In Re: Wolline, 74 B.R. 208 (Bankr. E.D. Wis. 1987). This contention lacks merit.

As to the second issue, 11 U.S.C. §101(21) provides that "'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." In Michael v. Beard, 45 F.3d 113 (6th Cir. 1995) the Sixth Circuit described the purpose of Chapter 12:

> Chapter 12 was created by Congress because many family farmers . . .cannot qualify under Chapter 13 because their debts exceed the statutory limits . . . Further, the possible Chapter 11 relief to family farmers is often "needlessly complicated, unduly time consuming, inordinately expensive and, in too many cases, unworkable." . . . Chapter 12 is intended to "give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." In Chapter 12, it is intended that family farmers will receive "important protection from creditors"; however, Chapter 12 is also intended to prevent abuse of the bankruptcy system and to ensure farm creditors will receive fair debt repayment treatment.

5

Id. at 116 (quoting In re Pianowski, 92 B.R. 225, 232 (W.D. Mich. 1988)).

In In Re: Armstrong, 812 F.2d 1024, 1026 (7th Cir. 1987), in a proceeding involving a farming operation, the Seventh Circuit reversed the lower court's ruling for "too rigid an analysis when one takes into account the purpose and history behind the relevant statutory law and the broad interpretation to be given to the Bankruptcy Code in general." In a prior action, the Bankruptcy Court in this district concluded that Congress intended the definition of "farming operation" to be given a broad interpretation. In re Blanton Smith Corporation, 7 B.R. 410 (Bankr. M.D. Tenn. 1980). In Blanton Smith the issue was whether the debtor was a "farmer" for the purposes of determining whether creditors could compel liquidation under 11 U.S.C. §1112(c). In Blanton Smith, the debtor's entire gross income was derived from processing, packaging and marketing of eggs. The Court examined the legislative history on the definition of a "farmer" and "farming operation," and found a House Report that defined "farmer" to encompass only small farmers. Id. at 413. A compromise bill, however, was enacted with a new definition of "farming operation." In citing the drafters' commentary, the Court concluded that the Congress intended to give the definition of "farmer" and "farming operation" a broad construction. The rationale for Chapter 12 status is in the risks associated with a farming operation: "[t]he irregular nature and the potential ups and downs of a farmer's income would require a different test for an involuntary petition against a farmer. . ." Id.

The majority of decisions adopt a "totality of circumstances" approach in deciding what constitutes a "farming operation." In re: Burke, 81 B.R. 971, 976 (Bankr. S.D. Iowa 1987). In In Re: Butcher, 43 B.R. 513 (Bankr. E.D. Tenn. 1984), that Court found the business of farming can include raising livestock:

6

> "[T]he definitions and the commentary . . . stress the notion of raising crops or livestock as the essence of farming. It is this involvement in stabilize process of growing or developing crops and livestock that defines farming . . . In the case of livestock, farming similarly contemplates the breeding, maintaining and bringing to maturity of the animals and the subsequent marketing of the animal's. . . ."

Id. at 519. (emphasis in the original). In In Re Maike 77 B.R. 832 (Bankr. D. Kan. May 12, 1987), the court noted a risk to the breeding, selling and raising of dogs and concluded that "if feeding and maintaining other peoples' cattle for ultimate resale is a farming operation, the same services performed with respect to dogs should also be considered farming." Id. at 839. The Maike court deemed evidence of personal involvement and risk as necessary to be a farmer. Id. at 838. Contra, In re Buckingham, 197 B.R. 97 (Bankr. D. Mont. 1996)(sheep); In re Cluck, 101 B.R. 691, 695 (Bankr. E.D. Okla. 1989)(horses).

As applied here, under the Bankruptcy Court's findings the Debtors have the same types of risks as do other agricultural business, and the debtors' business was regulated by the Department of Agriculture. Given these factual findings, the broad rule of interpretation and the cited decisions, the Court concludes that the Bankruptcy Court reasonably concluded that the debtors' breeding, raising and the actual sale of horses constitute farming operations under 11 U.S.C. §101(21).

As to the valuation issue, the Bankruptcy Judge relied upon In Re: American Home Patient, Inc., 298 B.R. 152 (Bankr. M.D. Tenn. 2003) on the valuation issue.

> "The valuation of property is an inexact science and whatever method is used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either."
>
> * * *
>
> "Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses."

7

* * *

> [W]hen "weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including: ... the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducing the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented ... A bankruptcy court is not bound to accept the values contained in the parties' appraisals; rather, it may form its own opinion considering the appraisals and expert testimony."

Id. at 173.

In this Court's view, given its statutory responsibilities in the valuation of assets, the Bankruptcy Court possessed discretion to appoint a qualified appraiser and can elect the appropriate evaluation among competing appraisals, given the inexactness of that discipline. Richardson's evaluation has factual bases and made a reasonable evaluation. Although BankEast's predecessor's loan appraisal is also based upon an appraisal, that appraisal was made two years prior to the proceeding and did not give adequate consideration of the debtors' farming operation. The Court deems the Bankruptcy Judge's decision a reasonable interpretation of the relevant facts to the correct legal standards.

For this reason, the Order of the Bankruptcy Judge is **AFFIRMED**.

An appropriate Order is filed herewith.

**ENTERED** this the 25th day of July, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge